# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# SOUTHERN DIVISION
# AT PIKEVILLE

**CIVIL ACTION NO. 18-66-DLB**

**BELINDA MCKINNEY**                                                                                                         **PLAINTIFF**

**vs.**                           **MEMORANDUM OPINION & ORDER**

**NANCY A. BERRYHILL, Acting Commissioner**
**of the Social Security Administration**                                  **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, and for the reasons set forth herein, will **affirm** the Commissioner's decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 29, 2014, Plaintiff Belinda McKinney filed an application for disability insurance benefits. (Tr. 78-81, 216). Plaintiff was fifty years old at the time of filing, and she alleged that she was unable to work due to, *inter alia*, back pain, hypertension, allergic rhinitis, depression, diabetic stenosis, neuropathy, GERD, and fatigue. (Doc. # 7-1 at 2; Tr. 216, 232, 249-52, 254). Plaintiff worked as a nurse's aide from 2003 to 2007, and as an office manager from approximately 2008 to 2014; she alleged that her disability onset date began on September 1, 2014. (Tr. 42, 78-81, 301). Plaintiff's application was denied initially, and again upon reconsideration. (Tr. 78-79).

At Plaintiff's request, an administrative hearing was conducted by video on April 14, 2017, before Administrative Law Judge ("ALJ") Anthony J. Johnson, Jr. (Tr. 40-66). At the hearing, the ALJ heard the testimony of Plaintiff as well as a vocational expert. *Id.* On June 13, 2017, ALJ Johnson issued a written decision finding that Plaintiff was not disabled under Sections 216(i) and 223(d) of the Social Security Act. (Tr. 17-34). This decision became the final decision of the Commissioner on April 25, 2018, when the Appeals Council denied Plaintiff's request for review. (Tr. 1-5); 42 U.S.C. § 405(g).

Plaintiff filed the instant action on June 18, 2018, alleging the ALJ "erred as a matter of law in failing to find on the evidence presented that the Plaintiff was disabled within the meaning of the law." (Doc. # 1 at 2). This matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 7 and 9).

## II. DISCUSSION

### A. Standard of Review

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court must affirm the Commissioner's decision, as long as it is supported by substantial evidence, even if the Court might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

If supported by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence favoring Plaintiff's side. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996).

**B. The ALJ's Determination**

To determine disability, the ALJ conducts a five-step analysis. Step One considers whether the claimant has engaged in substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his or her past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The burden of proof rests with the claimant on Steps One through Four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). As to the last step, the burden of proof shifts to the Commissioner to identify "jobs in the economy that accommodate [the claimant's] residual functional capacity." *Id.* The ALJ's determination becomes the final decision of the Commissioner if the Appeals Council denies review, as it did here. *See Thacker v. Berryhill*, No. 16-CV-114, 2017 WL 653546, at *1 (E.D. Ky. Feb. 16, 2017); (Tr. 1-7).

Here, at Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 1, 2014, the alleged onset date of the disability. (Tr. 22). At Step Two, the ALJ determined that the Plaintiff has the following severe impairments:

3

degenerative disc disease with radicular symptoms to the lower-right extremity and diabetes mellitus type II. *Id.* At Step Three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 25). At Step Four, the ALJ found that Plaintiff possesses the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following modifications and limitations:

> [Claimant is] able to lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently, stand and/or walk six hours in an eight hour workday and sit six or more hours in an eight hour workday; able to occasionally climb, but never climb ladder, ropes and scaffolds, occasionally balance, occasionally stoop, occasionally kneel, occasionally crouch and occasionally crawl; frequently but not constantly able to handle, finger and feel with the right upper extremity (dominant hand); occasionally able to perform overhead reaching with the right upper extremity; and must be permitted to change position between sitting and standing at intervals of approximately 20-30 minutes while remaining on task.

(Tr. 26). Based on this RFC and relying partially on the testimony of the vocational expert, the ALJ concluded that Plaintiff was able to perform her past relevant work as an office manager. (Tr. 33). Accordingly, the ALJ ruled that Plaintiff was not under a disability, as defined in the Social Security Act. (Tr. 24).

**C.    Analysis**

Plaintiff argues in her dispositive motion that the ALJ erred in finding that Plaintiff was capable of performing her past relevant work as an office manager, "as actually performed." (Doc. # 7-1 at 1-5). Plaintiff also argues that remand is proper because the

4

ALJ failed to ask the vocational expert questions about other work at any level of exertion other than her past relevant work.  *Id.*  The Court will address each argument[1] in turn.

### 1. The ALJ's Step Four analysis is not contrary to law and is supported by substantial evidence.

First, Plaintiff argues that the ALJ's finding that she is capable of performing past relevant work—as *actually* performed—is not supported by substantial evidence because the job description for Plaintiff's former position is inconsistent with the ALJ's RFC limitations.  (Doc. # 7-1 at 4) (citing Tr. 22).  Specifically, Plaintiff argues that "the ALJ obviously ignored the specific evidence on how [Plaintiff's] . . . specific job at Hospice of the Bluegrass . . . was actually performed by a job summary prepared by the employer itself," because the job description for Plaintiff's position at Hospice of the Bluegrass required heavier lifting requirements than the limits set forth in the RFC by the ALJ.  (Doc. # 7-1 at 5).

In his written decision, the ALJ found that, "[i]n comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform the work as office manager *as actually **and/or as generally performed***."  (Tr. 33) (emphasis added).  Plaintiff focuses upon the ALJ's finding that she was able to perform her past work as an office manager as "actually

---

[1]     Plaintiff also briefly references the assessment of her treating orthopedic surgeon, Dr. David Muffly, who examined her in the context of a workers' compensation claim, and notes that the ALJ did not include Dr. Muffly's limitations in his ultimate RFC finding or his questioning to the vocational expert. (Doc. # 7-1 at 6).  However, Plaintiff's mention of Dr. Muffly's assessment is perfunctory at best, and "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996).  Moreover, where, as here, "the opinion of a treating physician is not supported by objective evidence or is inconsistent with the other medical evidence in the record," the Sixth Circuit "generally will uphold an ALJ's decision to discount that opinion" so long as the ALJ provided "good reasons" for doing so.  *Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 175-76 (6th Cir. 2009).  The ALJ having done so here, *see* (Tr. 29-30), Plaintiff's undeveloped argument on this point wholly fails, both procedurally and substantively.

performed," ignoring the "generally performed" portion of the decision. (Doc. # 7-1 at 4-5). Narrowing in on this issue, Plaintiff points to an exhibit which provides a job description for Plaintiff's "specific job at Hospice of the Bluegrass." *Id.* (citing Tr. 302-04). The physical requirements section of the job description provides that "[w]hile performing the duties of this job, the employee . . . must regularly lift and/or move up to 10 pounds, frequently lift and/or move up to 20 pounds, and occasionally lift and/or move up to 40 pounds." (Tr. 214). Based upon this description, Plaintiff characterizes her past work as an office manager as "a medium level job" that "fall[s] outside of the [ALJ's] specific findings" that Plaintiff is "limited to light work." (Doc. # 7-1 at 5).

Plaintiff relies on no relevant authority in support of her argument. *See id.* Indeed, case law does not support her claim. At Step Four of the sequential analysis, the ALJ must determine whether the claimant can still perform her past relevant work. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(e). The term "past relevant work" is work that the claimant has "done within the past fifteen years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 416.960(b)(1). When evaluating whether a claimant can perform past relevant work, the regulations mandate examining the claimant's RFC and comparing it to the physical and mental demands of the claimant's past relevant work. *Boucher v. Apfel*, 238 F.3d 419 (6th Cir. 2000) (table); 20 C.F.R. § 404.1520(f).

There are "[t]hree possible tests for determining whether or not a claimant retains the capacity to perform his or her past relevant work." SSR 82-61, 1982 WL 31387, *1 (Jan. 1, 1982). The first tests asks "[w]hether the claimant retains the capacity to perform a past relevant job based on a broad, generic occupation classification of that job, *e.g.*,

6

'delivery job,' 'packaging job,' etc." *Id.* A "[f]inding that a claimant has the capacity to do past relevant work on the basis of a generic occupational classification of the work is likely to be fallacious and unsupportable," however. *Id.* The second test asks "[w]hether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it." *Id.* "Under this test, where the evidence shows that a claimant retains the RFC to perform the functional demands and job duties of a particular past relevant job as he or she actually performed it, the claimant should be found to be 'not disabled.'" *Id.* at 2. The third test asks "[w]hether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." *Id.*

There are circumstances where the past-relevant-work tests will produce conflicting results. Within a broad occupational title, work can be performed in countless ways. The Commissioner has recognized this dichotomy and contemplated the possibility that a "former job performed by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy." *Roark v. Comm'r of Soc. Sec.*, No. 17-CV-125, 2018 WL 561851, at *3 (E.D. Ky. Jan. 25, 2018) (citing SSR 82-61, 1982 WL 31387, at *1). Under that scenario, and "if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'" *Id.* Thus, as Plaintiff's argument fails to appreciate, even if Plaintiff satisfies the "actually performed" prong of Step Four, the Commissioner can utilize generalities from the national economy to

7

eliminate subjectivity from the past-relevant-work inquiry, and deny benefits under the "generally performed" prong if the Plaintiff's RFC enables her to perform her past relevant work, as generally required by employers. *Id.*

Here, the ALJ relied upon the VE in finding that "[t]he exertional level of the office manager work does not exceed the exertional level in the assessed residual functional capacity." *Id.* The VE testified at the administrative hearing that Plaintiff retained the RFC to perform the functional demands and job duties of the job of office manager, as ordinarily required by employers throughout the national economy. *Id.* Regardless, therefore, of Plaintiff's argument that she should prevail under the second test because she lacked the RFC to actually perform her specific job at Hospice of the Bluegrass, the Commissioner prevails under the third test. When the Commissioner concludes the sequential analysis at Step Four and determines that the claimant can perform his or her past relevant work, either as actually performed or as generally performed in the national economy, there is no requirement that the Commissioner consider whether such a position is actually available to the claimant or whether a significant number of positions exist in the national economy. *Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 557 (6th Cir. 1995) ("Social Security Ruling 82-40 makes express what is implicit in Ruling 82-61: The Secretary will not consider whether past work as actually performed is currently available in significant numbers in the national economy."). Put another way, it matters not whether the claimant can actually return to her former job. *Roark*, 2018 WL 561851, at *4. Thus, Plaintiff's inability to perform her specific job at Hospice of the Bluegrass is irrelevant—particularly in light of the VE's testimony.

As set forth *supra*, in this case, the ALJ utilized the services of a VE and relied on the VE's testimony that the Plaintiff could perform her past relevant work as an office manager under the third test:

> Q: Would you please consider a hypothetical individual with the same age, educational background and work experience as Ms. McKinney. An individual closely approaching advanced age during the period that we will consider with a high school education per the DOT. And for the first hypothetical, would be able to lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently, stand and/or walk six hours in an eight-hour workday and sit or more hours in an eight-hour workday. Frequently able to climb ramps and stairs, occasionally able to climb ladders, ropes, or scaffolds. No limitations in the ability to balance, stoop, kneel, or crouch. All of those would have no limitation. Only occasionally would be able to crawl. With the upper right extremity, which is the dominant hand of the hypothetical individual could frequently but not constantly handle, finger and feel.
>
> A: You said frequently?
>
> Q: Frequently.
>
> A: Okay.
>
> Q: And could perform overhead reaching with that right upper extremity only occasionally. If those were the limitations, would the hypothetical individual be able to perform Ms. McKinney's past work?
>
> A: *The office manager as typically performed*, Your Honor.
>
> Q: If the hypothetical individual needs to be able to change position from sitting to standing or – or between those, you know, either one – sitting to standing, standing to sitting, at intervals of 20 to 30 minutes while remaining on task, would that have any effect on the ability to perform the past work?
>
> A: No, Your Honor. The office manager would still be a possibility.

(Tr. 62-63) (emphasis added). The ALJ found that the VE was "well qualified to testify as to reaching and a sit-stand option based on his education and professional experience."

9

*Id.* Further, "the vocational expert's testimony is consistent with the information contained in the DOT" pursuant to SSR 00-4p. *Id.*

Accordingly, Plaintiff's argument—with no supporting relevant authority—that the ALJ incorrectly determined that she could perform her past occupation as an office manager as she actually performed it ultimately has no impact on the correctness of the ALJ's Step-Four finding. *See* 20 C.F.R. § 404.1560(b)(2) (stating that a vocational expert may offer relevant evidence concerning the demands of the claimant's past word as generally or actually performed). Plaintiff has wholly failed to show that the ALJ's analysis is contrary to law.

Relatedly, Plaintiff also argues that in light of the job description for the office manager position at Hospice of the Bluegrass, the ALJ's decision is not supported by substantial evidence. This argument also fails to withstand scrutiny. The ALJ supported his RFC finding with numerous references to both objective medical records, as well as the opinions of treating and examining medical sources. (Tr. 22-32). Despite alleged symptoms of back and right-hand pain following a February 2014 motor-vehicle accident, examinations by Plaintiff's primary-care provider revealed generally normal and minimal objective findings including improved grip strength in the right hand with the conservative course of treatment of physical therapy. *See* (Tr. 311, 333, 339, 610, 663, 669, 671, 674, 675, 678, 682). Through September 2015, primary-care examinations revealed that Plaintiff was not in distress and had normal heart, lung, and/or abdominal examinations, no noted tenderness, no noted positive straight-leg-raise testing, and/or no noted motor, sensory, strength, arm/hand use, or gait deficits or abnormalities. (Tr. 309-32, 367-77, 477-95, 662-96, 756-88). The March 2015 consultative examination by William E.

Waltrip, M.D., revealed a broad range of normal findings that Plaintiff was fully oriented and had normal chest and lung examinations, a supple neck, and no extremity deformities. (Tr. 343-48). Plaintiff was found to have normal ranges of motion globally, 5/5 lower extremity strength, no loss of motor strength, no loss of sensation, and normal deep tendon reflexes. *Id.* Dr. Waltrip opined that Plaintiff is only moderately limited in her ability to walk, stand, and sit, and she should be able to lift objects of 25-30 pounds. *Id.*

Phillip A. Tibbs, M.D., performed a lumbar microdiscectomy in October 2015 and in November 2016, Dr. Tibbs advised Plaintiff "to not lift more than 20 pounds maximally or 10 pounds repetitively, be able to change from a standing to sitting position as needed [and] to avoid repetitive bending or twisting of the waist." (Tr. 612, 1047-48). However, the record continued to reveal generally normal and minimal objective findings after the October 2015 back procedure, and the post-operative course of treatment was conservative, including medication for pain and diabetes and physical therapy. (Tr. 507-91, 594-603, 615-96, 697-788, 1002-04).Through January 2017, primary-care examinations revealed a broad range of normal findings, including no noted tenderness, no noted positive straight leg raise testing, and/or no noted motor, sensory, strength, arm/hand use, gait deficits or abnormalities. (Tr. 615-63, 700-53, 1002-03).

In June 2016, Dr. Muffly conducted an examination. (Tr. 496-99). While this examination revealed squatting to only twenty-five percent due to Plaintiff's subjective back pain, this examination also revealed no assistive device used to walk, good balance, and no limp with walking. *Id.* Additionally, Plaintiff had a non-tender cervical spine with no cervical spasms. (Tr. 496-99). Similarly, in an October 2016 examination by G.

Christopher Stephens, M.D., Plaintiff had a full range of motion, no muscle spasm, no measurable atrophy of the thighs or calves, and only back pain with straight-leg-raise testing. *Id.* Plaintiff also had a normal gait, did not use any assistive devices, and was able to stand on her heels and toes normally. *Id.* She additionally had normal strength globally and intact sensation throughout the lower extremities, despite diminished deep-tendon reflexes at the knees and ankles and an absent right-ankle reflex. *Id.* Dr. Stephens opined that while Plaintiff should not repetitively lift over 50 pounds, he did not see any necessity for any other restrictions and that it was his opinion that Plaintiff could return to her past occupation as an office manager. (Tr. 1044). Likewise, in a May 2015 examination by State-agency medical consultant Jack Reed, M.D., Dr. Reed opined that Plaintiff retained the capacity to work at the light-exertion level with postural limitations. (Tr. 86-88).

A vocational expert, Robert Jackson, also testified. (Tr. 61-65). To "determine whether a claimant can do his past relevant work, given his RFC," the "regulations permit an ALJ to use the services of a vocational expert at Step Four." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (citing 20 C.F.R. § 404.1560(b)(2)). Specifically, the "vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2). "In addition, a vocation expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's

medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." *Id*.

Simply put, substantial evidence in the record—including both objective findings and opinions—supports the ALJ's conclusion that Plaintiff is not disabled under the third test outlined in *Roark*, 2018 WL 561851, at *3. The decision must therefore be affirmed, even if this Court would have decided the matter differently and even if substantial evidence supports the opposite conclusion. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Consequently, the ALJ's decision is **affirmed**.

### 2. *The ALJ did not err by restricting his questions to the vocational expert to Plaintiff's past relevant work.*

Finally, Plaintiff argues that the ALJ erred because he "did not ask a single question" to the vocational expert about "any other light or sedentary jobs available in the national economy that this Plaintiff could perform" and, erroneously, instead "merely found that [Plaintiff] could do her past relevant work as actually performed and as performed nationally and based his decision upon that specific finding." (Doc. # 7-1 at 1, 5). Plaintiff seeks a remand "for a new determination as to the specific findings on the ability to perform the Plaintiff's past relevant work as actually performed and/or whether there are other jobs at the light or sedentary category that the Plaintiff could still perform considering all the evidence in the record." *Id.*

This argument lacks merit. Once the vocational expert persuasively testified—and the ALJ concluded, based upon sufficient evidence in the record—that a claimant could perform Plaintiff's past occupation as an office manager "as typically performed," Plaintiff did not meet her Step-Four burden and the ALJ was therefore not required to proceed to

Step Five of the sequential evaluation to determine if other work existed. (Tr. 63). Upon making this well-supported finding, the ALJ was not required to proceed to Step Five of the sequential evaluation and determine if other work, such as the "light or sedentary jobs" referenced by Plaintiff, existed. (Doc. # 7-1 at 5; 20 C.F.R. § 404.1520(a)(4)(iv)). The regulations provide that "[i]f you can still do your past relevant work, we will find that you are not disabled." *Id.* Plaintiff relies on no relevant authority in support of her argument that further inquiry was required. Without more, Plaintiff's claim fails as a matter of law, and the ALJ's decision is **affirmed**.

### III. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1) The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment (Doc. # 7) is hereby **DENIED**;

(3) Defendant's Motion for Summary Judgment (Doc. # 9) is hereby **GRANTED**;

(4) This civil action is hereby **DISMISSED** and **STRICKEN** from the Court's active docket; and

(5) A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 30th day of May, 2019.



Signed By:
*David L. Bunning* DB
United States District Judge